**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

WHEEL CHOICE, LLC,

                          Plaintiff,

         -against-

SAINTY GROUP (U.S.A.), INC., JIANGSU
SAINTY MACHINERY and IMP. & EXP. CO.
LTD. and CHOICE AUTO, INC.

                    Defendants.

Case No.: 7:20-cv-05629 (CS)

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT**
**JIANGSU SAINTY MACHINERY AND IMP. & EXP. CO. LTD.'S**
**MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

ZHONG LUN NEW YORK LLP
Two Wall Street, 21st Floor
New York, NY 10005
tel: (212) 380-8388

ZHONG LUN LAW FIRM LLP
4322 Wilshire Blvd. Suite 200
Los Angeles, CA 90025
tel: (323) 930-5690

*Attorneys for Defendant Jiangsu Sainty*
*Machinery and Imp. & Exp. Co. Ltd.*

# TABLE OF CONTENTS

**page**

TABLE OF AUTHORITIES ......................................................................................................... iii

PRELIMINARY STATEMENT .................................................................................................... 1

SUMMARY OF PLAINTIFF'S ALLEGATIONS ........................................................................ 3

ARGUMENT .................................................................................................................................. 6

I. WHEEL CHOICE IMPERMISSIBLY ENGAGES IN "GROUP PLEADING" AND FAILS TO GIVE NOTICE OF ANY CLAIM AGAINST JIANGSU. ............................. 6

II. WHEEL CHOICE FAILS TO STATE A CLAIM BASED ON THE PARTIES' SETTLEMENT AGREEMENTS (COUNTS XI & XVIII). ............................................... 9

III. THE SETTLED CLAIMS FAIL AS A MATTER OF LAW ......................................... 11

    A. The Doctrine Of Accord And Satisfaction Bars Counts I Through IX ................ 11

    B. The Court Should Dismiss Wheel Choice's Tort Claims (Counts III, VI, VII, VIII, IX) Because They Are Duplicative Of Wheel Choice's Contract Claims... 13

        1. The CISG Bars Wheel Choice's Tort Claims. .......................................... 13

        2. New York Law Bars Wheel Choice's Tort Claims. ................................. 15

            a. The Tort Claims Are Duplicative of Contract Claims. ................. 15

            b. The Economic Loss Rule Bars Wheel Choice's Tort Claims. ....... 17

    C. Wheel Choice Fails To State A Fraud Claim (Counts VI & VIII). ...................... 19

IV. THE POST-SETTLEMENT CLAIMS FAIL AS A MATTER OF LAW. ...................... 20

    A. Wheel Choice's Failure to Satisfy Pleading Requirements Requires Dismissal Of The Post-Settlement Claims (Counts XIII, XIV, XV, XVI, XVIII). ............... 20

    B. Wheel Choice's Claim Under Section 349 Of New York General Business Law (Count XVI) Is Duplicative Of Wheel Choice's Contract Claim. ................ 21

V. WHEEL CHOICE'S IMPLIED INDEMNITY CLAIM FAILS AS A MATTER OF LAW (COUNT X). ................................................................................................. 22

VI. WHEEL CHOICE'S CONTRIBUTION CLAIM FAILS AS A MATTER OF LAW (COUNT XII). ................................................................................................. 23

VII.     WHEEL CHOICE HAS NOT ALLEGED A VIABLE BASIS FOR ATTORNEYS'
         FEES (COUNT XIII)........................................................................................................ 24

VIII.    THE COURT SHOULD DISMISS THE  CLAIMS AGAINST JIANGSU WITH
         PREJUDICE. ................................................................................................................. 24

CONCLUSION...................................................................................................................... 25

# TABLE OF AUTHORITIES

**page(s)**

**Cases**

*Am. Med. Distribs. v. MacDonald Tuskey & Redhawk Holdings Corp.*,
   16-CV-6016, 2018 WL 1478301 (S.D.N.Y. Mar. 23, 2018)...................................... 23

*Asante Techs., Inc. v. PMC-Sierra, Inc.*,
   164 F. Supp. 2d 1142 (N.D. Cal. 2001) ................................................................ 13

*Assoun v. Assoun*,
   No. 14 Civ. 1368, 2015 WL 110106 (S.D.N.Y. Jan. 7, 2015).................................. 19

*Atuahene v. Hartford*,
   10 Fed. App'x 33 (2d Cir. 2001) ......................................................................... 7

*Automated Transaction LLC v. N.Y. Cmty. Bank*,
   No. 12-CV-3070, 2013 WL 992423 (E.D.N.Y. Mar. 13, 2013)............................... 7

*Axar Master Fund, Ltd. v. Bedford*,
   308 F. Supp. 3d 743 (S.D.N.Y. 2018) ................................................................. 11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).................................................................................. 6, 19, 21

*Board of Educ. v. Sargent, Webster, Crenshaw & Folley*,
   71 N.Y.2d 21 (1987) ......................................................................................... 23

*Board of Managers of Olive Park Condo. v. Maspeth Props., LLC*,
   170 A.D. 3d 645 (N.Y. App. Div. 2019) ............................................................ 22

*Brauer v. Central Trust Co.*,
   77 A.D.2d 239 (N.Y. App. Div. 1980) ........................................................... 12-13

*Canzona v. Atanasio*,
   118 A.D.3d 837 (N.Y. App. Div. 2014) ............................................................... 9

*Carmania Corp., N.V. v. Hambrecht Terrell Int'l*,
   705 F. Supp. 936 (S.D.N.Y. 1989) ..................................................................... 17

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002)............................................................................ 3-4

*Chatham Towers, Inc. v. Castle Restoration & Constr. Co., Inc.*,
   151 A.D.3d 419 (N.Y. App. Div. 2017) .............................................................. 23

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*,
    70 N.Y.2d 382 (1987) ............................................................................ 15, 16, 17

*Cortec Industries, Inc. v. Sum Holding L.P.*,
    949 F.2d 42 (2d Cir. 1991) ............................................................................ 4

*Cronos Grp. Ltd. v. XComIP, LLC*,
    156 A.D.3d 54 (N.Y. App. Div. 2017) ...................................................... 16

*Dole Foods v. Patrickson*,
    538 U.S. 468 (2003) ....................................................................................... 8

*Electrocraft Ark., Inc. v. Super Electric Motors, Ltd.*,
    No. 4:09cv00318, 2009 WL 5181854 (E.D. Ark. Dec. 23, 2009) ................. 8, 13, 14

*In re Crude Oil Commodity Litig.*,
    No. 06 Civ. 6677, 2007 WL 2589482 (S.D.N.Y. Sept. 7, 2007) ................ 25

*In re DNTW Chartered Accountants Sec. Litig.*,
    172 F. Supp. 3d 675 (S.D.N.Y. 2016) ...................................................... 11

*Julien J. Studley, Inc. v. New York News, Inc.*,
    70 N.Y.2d 628 (1987) ................................................................................ 22

*Kalimantano GmbH v. Motion in Time, Inc.*,
    939 F. Supp. 2d 392 (S.D.N.Y. 2013) ...................................................... 16, 17

*Kravitz v. Travarios*,
    No. 19 Civ. 8438, 2020 WL 3871340 (S.D.N.Y. July 8, 2020) .................. 24

*Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*,
    244 F.R.D. 204 (S.D.N.Y. 2007) .............................................................. 18, 19

*Morris v. N.Y. State Dep't of Taxation & Fin.*,
    82 N.Y.2d 135 (1993) .................................................................................. 8

*Negrete v. Citibank, N.A.*,
    759 Fed. App'x 42 (2d Cir. 2019) .............................................................. 10

*N. Am. Specialty Ins. Group. v. Am. Int'l Group, Inc.*,
    Case No. CV 08-2818 PA, 2008 WL 11343397 (C.D. Cal. Sept. 8, 2008) .............. 8

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000) ....................................................................... 19-20

*Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*,
    No. 12 Civ. 2837, 2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012) ................ 7, 9

*Oscar Gruss & Son, Inc. v. Hollander*,
    337 F.3d 186 (2d Cir. 2003) ............................................................... 24

*Reilly v. U.S. Physical Therapy, Inc.*,
    No. 17 Civ. 2347, 2018 WL 3559089 (S.D.N.Y. July 23, 2018) ...................................... 11, 20

*Rojas v. Don King Prods., Inc.*,
    No. 11 Civ. 8468(KBF), 2012 WL 760336 (S.D.N.Y. March 6, 2012). ........................... 10, 13

*Royal Disc. Corp. v. Luxor Motor Sales Corp.*,
    9 Misc. 2d 307 (App. Term 1957) ................................................... 24

*Shred-It USA Inc., v. Mobile Data Shred*,
    222 F. Supp. 2d 376 (S.D.N.Y. 2002) ................................................ 18

*Spagnola v. Chubb*,
    574 F.3d 64 (2d Cir. 2009) ......................................................... 21-22

*Telecom Int'l America v. AT&T Corp.*,
    280 F.3d 175 (2d Cir. 2001) ........................................................ 16

*Tractebel Energy Marketing, Inc. v. AEP Power Marketing, Inc.*,
    487 F.3d 89 (2d Cir. 2007) ......................................................... 18

*U.S. v. Best Foods*,
    524 U.S. 51 (1998) .................................................................. 8

*Weihai Textile Group Import & Export Co. v. Level 8 Apparel, LLC*,
    No. 11 Civ. 4405, 2014 WL 1494327 (S.D.N.Y. Mar. 28, 2014) ...................................... 13, 14

## Statutes and Rules

CPLR § 1401 ................................................................................. 3, 23

N.Y. Gen. Business Law § 349 .............................................................. 21, 22

N.Y. Gen. Obligations Law § 15-501 ....................................................... 12

N.Y. Gen. Obligations Law § 15-503 ....................................................... 12

Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), Defendant Jiangsu Sainty Machinery and Imp. & Exp. Co. Ltd. ("Jiangsu") respectfully submits this memorandum of law in support of its motion to dismiss Plaintiff's Second Amended Complaint, dated January 29, 2021 (Doc. 35) (the "Second Amended Complaint" or "SAC").[1]

## PRELIMINARY STATEMENT

Plaintiff Wheel Choice, LLC ("Wheel Choice") contracted with Jiangsu to supply it with wheels with Wheel Choice's newly created brand name "Alfina Luxury Wheels" (the "Alfina Wheels"). According to Wheel Choice, about 10% of the Alfina Wheels have broken. Before Wheel Choice filed this lawsuit, the parties settled claims arising out of those wheels. In its Second Amended Complaint, while Wheel Choices acknowledges that settlement, Wheel Choice alleges seventeen claims against Jiangsu. However, when examined, all of the alleged claims are defective.

As an initial matter, Wheel Choice improperly defines "Jiangsu" to include a separate legal entity, defendant Sainty Group (U.S.A.), Inc. ("Sainty Group"). It then makes allegations as to both defendants as if they were one entity. It is well-settled that such "group pleading" does not satisfy Rule 8(a)'s pleading requirements. Wheel Choice's failure to separately plead against each defendant mandates dismissal of all claims against Jiangsu. (Section I, below.)

In any event, Wheel Choice fails to allege any basis to avoid the impact of the parties' settlement agreements. To resolve their dispute, Jiangsu and Wheel Choice entered into two written agreements. First, in August 2018, the parties entered into an indemnification agreement, whereby Jiangsu agreed to indemnify Wheel Choice for liability Wheel Choice might incur from

---

[1] For purposes of this motion only, Jiangsu assumes, without conceding, the truth of well-pleaded factual allegations in the Second Amended Complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.").

defects in the Alfina Wheels (the "Indemnification Agreement").  Second, in October 2018, Jiangsu agreed to compensate Wheel Choice for the allegedly faulty Alfina Wheels and accept return of unsold wheels (the "October 2018 Agreement," and with the Indemnification Agreement, the "Settlement Agreements").  Although Wheel Choice asserts Jiangsu breached the Settlement Agreements (Counts XI, XVIII), it fails to plead facts that would demonstrate any such breach or its own complete performance of the Settlement Agreements.  Accordingly, those breach-of-contract claims must fail as a matter of law.  (Section II.)

The Settlement Agreements cover nine claims Wheel Choice asserts in the Second Amended Complaint (*i.e.*, Counts I-IX, the "Settled Claims").  Under the doctrine of accord and satisfaction, by signing the Settlement Agreements, Wheel Choice agreed to compromise those claims and waived the right to assert them in this litigation.  (Section III.A.)

Wheel Choice's tort claims (Counts III, VI, VII, VIII, IX) are also barred by the governing law of the United Nations Convention on Contracts for the International Sale of Goods (the "CISG").  Under the CISG, Wheel Choice may not assert tort claims that are duplicative of its contract claims.  Even if the CISG did not apply to Wheel Choice's tort claims, New York law provides a similar bar.  Further, under New York's economic loss rule, a party cannot assert a tort claim where the damages are remediable in contract.  (Section III.B.)

Wheel Choice's fraud and intentional misrepresentation claims also suffer from additional defects.  Wheel Choice fails under Rule 8(a) to plead facts showing the plausibility of its assertion that Jiangsu knowingly sold defective wheels to Wheel Choice.  Wheel Choice also fails under Rule 9(b) to "state with particularity the circumstances constituting fraud," including identifying who made the alleged representations at issue, where and when such representations were made, or why such representations were fraudulent.  (Section III.C.)

Wheel Choice also alleges five claims based on its allegation that Jiangsu sold the faulty Alfina Wheels to other distributors after the parties' settlement (Counts XIII, XIV, XV, XVI, XVIII; the "Post-Settlement Claims").  All of those claims are defective because Wheel Choice acknowledged Defendant Choice Auto, Inc. ("Choice Auto")—not Jiangsu—actually sold those wheels.  While Wheel Choice still speculates Jiangsu was involved in those sales, it nevertheless fails to offer an iota of relevant facts to support such claims; it only points to a single invoice from Choice Auto's subsidiary, which does not even mention Jiangsu.  The Court should dismiss all of Wheel Choice's Post-Settlement Claims.  (Section IV.)

Wheel Choice's claims for common-law indemnity, contribution, and attorneys' fees equally fail.  Wheel Choice has not pled any facts showing it is entitled to common-law indemnity; besides, such claim is precluded by the Indemnification Agreement.  (Section V.)  The contribution claim fails because Wheel Choice has not alleged "personal injury, injury to property or wrongful death," CPLR § 1401, and it is well-settled that a party cannot assert a contribution claim based on economic loss from a breach of contract.  (Section VI.)  Finally, Wheel Choice cannot get around the general rule forbidding the award of attorneys' fees.  (Section VII.)

Because Wheel Choice has now failed on three occasions to state a viable claim against Jiangsu, the Court should dismiss all of its claims against Jiangsu with prejudice.  (Section VIII.)

## SUMMARY OF PLAINTIFF'S ALLEGATIONS

Jiangsu bases this summary on the Second Amended Complaint's allegations and documents the Second Amended Complaint incorporates by reference.  (*See* SAC at 8 n.1 (incorporating by reference Rafael Pirutinsky's declarations and exhibits).)[2]  In this motion, except

---

[2] *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents

as provided in Section I below, Jiangsu assumes, without conceding, that allegations as to "Jiangsu," which Wheel Choice defines as both Jiangsu Sainty Machinery and Imp. & Exp. Co. Ltd. and Sainty Group, concern Jiangsu Sainty Machinery and Imp. & Exp. Co. Ltd.

**Wheel Choice Buys the Alfina Wheels from Jiangsu.**

Wheel Choice, a New York company, distributes Alfina Wheels to wholesalers and retailers in the automotive industry. (SAC ¶¶ 2, 7; Supplemental Decl. of Rafael Pirutinsky, dated August 18, 2020 ("Pirutinsky Decl.") ¶ 1.) Wheel Choice did not manufacture the Alfina Wheels itself. (SAC ¶¶ 14-15.) It alleges to have purchased them from Jiangsu, a Chinese company. (SAC ¶¶ 1, 9; Pirutinsky Decl. ¶ 4 & Ex. C.) Wheel Choice incorporates a "Purchase Order," dated October 20, 2017, which provides terms for shipment and payment. (Pirutinsky Decl. Ex. C.) The Purchase Order states that "[t]he quanlity [*sic*] guarantee is life time [*sic*] for structure and one year for surface." (*Id*.)

In June 2018, Jiangsu delivered the Alfina Wheels to Wheel Choice. (SAC ¶ 16.) Wheel Choice alleges that it distributed those wheels "to various retail and/or wholesale distributors of automotive tires." (*Id*.) According to Wheel Choice, "[f]rom the very outset," the Alfina Wheels "failed to function properly." (SAC ¶ 17; Pirutinsky Decl. ¶ 6.) Wheel Choice claims that "various purchasers" complained about the wheels, although it only identifies one of those customers—Webster Tire and Wheels. (Pirutinsky Decl. ¶ 6.) In June 2019, Wheel Choice claimed that "[a]bout 10% of the sold wheels have broken." (*Id*. Ex. G at 2.)

**Wheel Choice Settles its Claims Against Jiangsu.**

"In an effort to resolve" claims arising out of the alleged defects in Alfina Wheels, "Wheel

incorporated in it by reference."); *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (holding the court may consider documents integral to the complaint).

Choice subsequently contracted with defendant Jiangsu." (SAC ¶ 18; Pirutinsky Decl. ¶ 9.) That subsequent contract addressed the same claims that underlie nine of the claims in this action, *i.e.*, that the wheels were "not of the kind and quality represented by Jiangsu," and they were "not of merchantable quality and not suitable for use by plaintiff's customers." (*Id.* (emphasis omitted).) The parties memorialized their settlement in the Indemnification Agreement and the October 2018 Agreement. (SAC ¶¶ 18, 93, 138; Pirutinsky ¶ 9 & Exs. F, H.) Wheel Choice also claims that Jiangsu "orally agreed" that returned wheels would be sent to China and not offered for sale in the United States. (SAC ¶ 18; Pirutinsky Decl. ¶ 9.)

Under the Indemnification Agreement, Jiangsu agreed to indemnify Wheel Choice for damages from the allegedly defective wheels it sold to Wheel Choice. (Pirutinsky Decl. Ex. H.) Although Wheel Choice asserts that "Jiangsu has refused to provide indemnity for any claims asserted by [its] customers," it does not allege a single fact about any of those claims or any communication with Jiangsu seeking indemnity for any particular claim. (*See* SAC ¶ 88; Pirutinsky Decl. ¶ 9.) Nor does Wheel Choice allege that it complied with its obligations in paragraph three of the Indemnification Agreement. Pursuant to that paragraph, in the event a customer asserts a claim against Wheel Choice, the Indemnification Agreement provides that:

> Wheel Choice will promptly notify [Jiangsu] in writing of the claim or action and [Jiangsu] shall manage and control, at its sole expense, the defense of the claim or action and/or its settlement. Wheel Choice shall cooperate with [Jiangsu] and may, with its own approval and at its own expense, choose to manage its own representation in any such proceeding.

(Pirutinsky Decl. Ex. H.)

Under the October 2018 Agreement, "regarding the cracked wheels," Jiangsu and Wheel Choice agreed that: (1) Jiangsu was to pay Wheel Choice "compensation" of $20,000; (2) Wheel Choice was to keep 300 wheels "free and clear as replacements for any potential[ly] cracked wheels in the future"; (3) Wheel Choice was to pay Jiangsu $33,731 for the 400 wheels that Wheel

Choice sold; and (4) "remaining goods in the warehouse must be shipped as returns within two weeks of the date of the signing of the agreement." (Pirutinsky Decl. Ex. F.) Wheel Choice does not allege Jiangsu violated those terms.

**Wheel Choice Alleges that Alfina Wheels Were Sold After the Parties' Settlement.**

Following the Settlement Agreement, Wheel Choice speculates that Jiangsu continued to "sell" or "distribute" the allegedly defective wheels. (SAC ¶¶ 109, 113, 121, 139.) Yet, Wheel Choice also alleges that an independent and separate entity—Choice Auto—actually sold those wheels. (Pirutinsky Decl. ¶ 10 & n.1, Exs. G, I.) For the post-settlement sales, Wheel Choice relies on an invoice by *Choice Auto's subsidiary* (Merceli Wheels), which makes no mention of Jiangsu. (*Id*. ¶ 10 & n.1, Ex. I.)

**Wheel Choice Trademarks the "Alfina" Name.**

On June 27, 2019, long after Wheel Choice allegedly received customer complaints about the Alfina Wheels, Wheel Choice applied to register the "Alfina" trademark. (*Id*. Ex. B.) Wheel Choice submitted that application days after discovering that Choice Auto had allegedly distributed Alfina Wheels without authorization. (*See id*. Ex. G.) The U.S. Patent and Trademark Office registered the "Alfina" trademark on February 18, 2020. (*Id*. Ex. B.) Wheel Choice's trademark claim is based on alleged acts before that date.

## ARGUMENT

I. **WHEEL CHOICE IMPERMISSIBLY ENGAGES IN "GROUP PLEADING" AND FAILS TO GIVE NOTICE OF ANY CLAIM AGAINST JIANGSU.**

Rule 8(a) requires that a plaintiff "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).[3] Wheel

---

[3] Unless otherwise indicated, internal alterations, citations, and quotation marks in passages quoted from cases are omitted.

Choice cannot circumvent this pleading requirement by "group pleading," *i.e.*, lumping different entities together, assigning them a defined term, and then using that term to avoid alleging any particular facts showing what each entity is alleged to have individually done. "Rule 8(a) is violated where a plaintiff, by engaging in 'group pleading,' fails to give each defendant fair notice of the claims against it." *Automated Transaction LLC v. N.Y. Cmty. Bank*, No. 12-CV-3070, 2013 WL 992423, at *4 (E.D.N.Y. Mar. 13, 2013). "By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [a] complaint fail[s] to satisfy [the] minimum [pleading] standard[.]" *Atuahene v. Hartford*, 10 Fed. App'x 33, 34 (2d Cir. 2001).

Here, the Second Amended Complaint fails to give notice of a viable claim to Jiangsu or Sainty Group. In the first paragraph of the Second Amended Complaint, Wheel Choice defines "Jiangsu" to include both those defendants. Wheel Choice then makes allegations as to "Jiangsu" throughout the Second Amended Complaint and fails to separately identify the two defendants in its factual allegations and in its seventeen counts against "Jiangsu." Such pleading is plainly deficient because it fails to give notice to Jiangsu and Sainty Group of the conduct each allegedly committed. *Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*, No. 12 Civ. 2837, 2012 WL 6082387, at *6 (S.D.N.Y. Dec. 3, 2012) ("A plaintiff cannot merely lump all the defendants together in each claim and provide no factual basis to distinguish their conduct."), *aff'd*, 530 F. App'x 19 (2d Cir. 2013).

Only paragraphs three and four of the Second Amended Complaint separately discuss defendants Jiangsu and Sainty Group. However, neither of those paragraphs or any other paragraph of the Second Amended Complaint contain allegations distinguishing the conduct of Jiangsu and Sainty in any respect, let alone concerning the Alfina Wheels' sales at issue here. In paragraphs three and four of the Second Amended Complaint, Wheel Choice alleges the

citizenships of and corporate relationships between Sainty Group and Jiangsu.  In paragraph three, Wheel Choice alleges that Sainty Group is a California corporation and "an affiliate and/or subsidiary" of Jiangsu.  In paragraph four, Wheel Choice alleges that Jiangsu's principal place of business is in China and "is the parent company of defendant Sainty [Group]."[4]  Wheel Choice does not—and cannot—allege any facts supporting its allegations that Jiangsu is the parent or an affiliate of Sainty Group.

Even if that were the case, it is well established that a corporate family member is not liable for the acts of other members in the corporate family.  *N. Am. Specialty Ins. Group. v. Am. Int'l Group, Inc.*, Case No. CV 08-2818 PA, 2008 WL 11343397, at *2 (C.D. Cal. Sept. 8, 2008) ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." (quoting *U.S. v. Best Foods*, 524 U.S. 51, 61 (1998), and collecting cases)); *Morris v. N.Y. State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 140 (1993) (in refusing to pierce the corporate veil, explaining that "a corporation exists independently of its owners, as a separate legal entity" and "the owners are normally not liable for the debts of the corporation"); *see also Dole Foods v. Patrickson*, 538 U.S. 468, 474-75 (2003) ("A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities.").  Wheel Choice does not allege that defendants Jiangsu and Sainty Group are "alter egos" or that their corporate veils should be pierced.

---

[4] Wheel Choice incorrectly alleges that Jiangsu "is organized and existing under the laws of California."  (SAC ¶ 4.)  The Court should reject that allegation (*see infra* n.6), because it is inconsistent with Wheel Choice's allegations that Jiangsu is a "foreign corporation" (SAC ¶ 9), and the CISG applies to Wheel Choice's claims (*id*. ¶¶ 28, 31, 34, 38), which requires that Wheel Choice contracted with a non-U.S. company.  *See Electrocraft Ark., Inc. v. Super Electric Motors, Ltd.*, No. 4:09cv00318, 2009 WL 5181854, at *3 (E.D. Ark. Dec. 23, 2009).

Wheel Choice's "failure to isolate the key allegations against each [of Jiangsu and Sainty Group] supports dismissal under the standards set forth in *Twombly* and *Iqbal*." *See Ochre LLC*, 2012 WL 6082387, at *6.

## II. WHEEL CHOICE FAILS TO STATE A CLAIM BASED ON THE PARTIES' SETTLEMENT AGREEMENTS (COUNTS XI & XVIII).

Under New York law, "[t]he essential elements of a breach of contract cause of action are the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of his or her contractual obligations, and damages resulting from the breach." *Canzona v. Atanasio*, 118 A.D.3d 837, 838 (N.Y. App. Div. 2014). The Court should dismiss Wheel Choice's claims under the parties' Settlement Agreements because Wheel Choice fails to allege facts showing (a) Jiangsu breached the Settlement Agreements, and (b) Wheel Choice performed its obligations under the Settlement Agreements.

First, Wheel Choice does not allege facts showing that Jiangsu breached either of the Settlement Agreements. While Wheel Choice asserts the legal conclusion that Jiangsu breached the Indemnification Agreement, it alleges only in general terms that Jiangsu "refused to indemnify" customer claims and fails to identify with any specificity a single customer claim Jiangsu wrongfully failed to indemnify. (SAC ¶¶ 98-99.) Moreover, Wheel Choice's allegations are not consistent with the October 2018 Agreement. Under that agreement, Jiangsu agreed to pay Wheel Choice a "cash compensation" of $20,000 for the "cracked wheels." (Pirutinsky Ex. F (item 1).) Wheel Choice does not allege Jiangsu failed to make that payment.

Nor does Wheel Choice allege that Jiangsu failed to comply with any of the written terms of the October 2018 Agreement. (SAC ¶ 139.)[5] Rather, Wheel Choice admits that Jiangsu "did

---

[5] As earlier noted, Wheel Choice alleges that Jiangsu "orally agreed" that the returned wheels would be sent to China and not offered for sale in the United States and Jiangsu breached the

accept the return of a good deal" of the allegedly faulty wheels, as agreed by the parties under the October 2018 Agreement.  (SAC ¶ 1; Pirutinsky Decl. ¶ 9.)

Second, because Wheel Choice fails to allege facts showing it performed its obligations under the Settlement Agreements, its breach-of-contract claims fail as a matter of law.  In *Rojas v. Don King Prods., Inc.*, although the plaintiff "alleged the basic elements of a breach of contract claim," the Court dismissed that claim because the plaintiff failed to allege compliance with the contract's notice and cure provision.  No. 11 Civ. 8468(KBF), 2012 WL 760336, at *2-3 (S.D.N.Y. March 6, 2012); *accord Negrete v. Citibank, N.A.*, 759 Fed. App'x 42, 46 (2d Cir. 2019) (dismissing breach-of-contract claim because the plaintiff failed to comply with the contract's dispute resolution procedure).

Here, while Wheel Choice alleges that it "fully performed its obligations" under the Settlement Agreements (SAC ¶¶ 95, 139), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678, 679 (Conclusions "are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").  To obtain indemnification from Jiangsu on a customer claim, paragraph three of the Indemnification Agreement requires Wheel Choice to:  (1) notify Jiangsu in writing of the claim; (2) allow Jiangsu to "manage and control" the defense and settlement of the claim; and (3) cooperate with Jiangsu.  (Pirutinsky Decl. Ex. H.)  Wheel Choice does not allege a single fact showing it performed any of those obligations.

---

October 2018 Agreement "by re-selling [the Alfina Wheels] it was obligated to send back to China."  (SAC ¶¶ 18, 139.)  As demonstrated in Section IV.A, those allegations are defective.

Nor does Wheel Choice allege facts showing it complied with its obligations under the October 2018 Agreement. While Wheel Choice asserts the legal conclusion that it has performed its obligations under that agreement (SAC ¶ 139), the Second Amended Complaint incorporates by reference an email by its managing member, Mr. Pirutinsky, which shows just the opposite. Specifically, Mr. Pirutinsky admits that Wheel Choice had "not met" the deadline to pay Jiangsu for the Alfina Wheels it had sold as required under item (3) of the October 2018 Agreement. (Ex. G at 2 (the "June 2019 Email"); Ex. F (requiring Wheel Choice to pay Jiangsu $33,731 before June 2019).) The Court "need not accept" Wheel Choice's allegation that it complied with the terms of the October 2018 Agreement "where it is inconsistent with the underlying documents." *Reilly v. U.S. Physical Therapy, Inc.*, No. 17 Civ. 2347, 2018 WL 3559089, at *14 n.18 (S.D.N.Y. July 23, 2018).[6] Accordingly, the Court should dismiss Wheel Choice's contract claims based on the Settlement Agreements (Counts XI, XVIII).

## III. THE SETTLED CLAIMS FAIL AS A MATTER OF LAW.

### A. The Doctrine Of Accord And Satisfaction Bars Counts I Through IX.

"[T]o resolve" claims arising out of the allegedly defective wheels, "Wheel Choice subsequently contracted with defendant Jiangsu." (SAC ¶¶ 18, 138; Pirutinsky Decl. ¶ 9 & Exs. F, H.) As discussed above, the parties' Settlement Agreements consisted of two written agreements: the Indemnification Agreement and the October 2018 Agreement. The doctrine of accord and satisfaction bars Wheel Choice from asserting claims covered by the Settlement Agreements.

---

[6] *Accord In re DNTW Chartered Accountants Sec. Litig.*, 172 F. Supp. 3d 675, 689 (S.D.N.Y. 2016) (rejecting an "assertion [that] [wa]s contradicted by Plaintiffs' other allegations"), *aff'd*, 666 F. App'x 78 (2d Cir. 2016); *Axar Master Fund, Ltd. v. Bedford*, 308 F. Supp. 3d 743, 757 (S.D.N.Y. 2018) (rejecting allegation that was "flatly inconsistent with another allegation in the complaint"), *motion for relief from judgment denied*, 17-cv-0426, 2019 WL 1367683 (S.D.N.Y. Mar. 26, 2019).

Under the doctrine of accord and satisfaction, a party agrees to discharge an obligation of another party on terms that are different from the original amount of the contract or claim. N.Y. Gen. Obligations Law § 15-503. The doctrine provides the offeror of an "executory accord" with a defense, even where the offeror has not completed performance. An executory accord is an agreement to discharge an obligation based on a stipulated performance. N.Y. Gen. Obligations Law § 15-501(2). Such executory accord:

> shall not be denied effect as a defense or as the basis of an action or counterclaim by reason of the fact that the satisfaction or discharge of the claim, cause of action, contract, [or] obligation . . . was to occur at a time after the making of the accord, provided the promise of the party against whom it is sought to enforce the accord is in writing and signed by such party or by his agent.

*Id*. Under Section 15-501(3), a party may assert its rights if the "executory accord is not performed according to its terms." N.Y. Gen. Obligations Law § 15-501(3).

The Settlement Agreements represent an accord and satisfaction and a bar to Wheel Choice's Settled Claims. The agreements are in writing, signed by Wheel Choice, and resolve claims arising out of the allegedly defective Alfina Wheels that Jiangsu sold to Wheel Choice. (Pirutinsky Decl. Ex. F (October 2018 Agreement resolves claims "regarding the cracked wheels"), Ex H (Indemnification Agreement covers "any direct or indirect claim or action involving or relating to the production, sale or distribution" of the Alfina Wheels Jiangsu sold Wheel Choice.) The Settled Claims allege contract and tort causes of action arising out of the same sales contracts and allegedly defective wheels that the parties resolved by the Settlement Agreements.

As demonstrated in Section II above, Wheel Choice does not allege facts showing Jiangsu breached either of the Settlement Agreements, or that Wheel Choice performed its obligations under those agreements. As such, Wheel Choice is bound by the Settlement Agreements and is barred from asserting claims based upon the Settled Claims. *See* N.Y. Gen. Obligations Law §§ 15-501, 15-503; *Brauer v. Central Trust Co.*, 77 A.D.2d 239, 246 (N.Y. App. Div. 1980)

(refusing to enforce promise in settlement agreement because the promisee failed to satisfy the condition for that promise); *see also Rojas*, 2012 WL 760336, at \*2-3. Accordingly, the Court should dismiss Counts I through IX.

**B. The Court Should Dismiss Wheel Choice's Tort Claims (Counts III, VI, VII, VIII, IX) Because They Are Duplicative Of Wheel Choice's Contract Claims.**

Wheel Choice alleges Jiangsu breached its sales contracts to supply it with conforming Alfina Wheels. (*See* Counts I, II, IV, V). The United States and the People's Republic of China are signatories of the CISG. *See Electrocraft Ark., Inc.*, 2009 WL 5181854, at \*3. Thus, Wheel Choice pleads, as it must, that the CISG governs certain of its contract claims. (SAC ¶¶ 28, 31, 34, 38.)[7] Wheel Choice also alleges five tort claims (Counts III, VI, VII, VIII, IX) that are duplicative of its contract claims. The CISG bars those claims. And even if the CISG did not apply to those tort claims, New York law bars them.

**1. The CISG Bars Wheel Choice's Tort Claims.**

Wheel Choice alleges five tort claims based on the Alfina Wheels' pre-settlement sales (Counts III, VI, VII, VIII, IX). "[A] tort that is in essence a contract claim and does not involve interests existing independently of contractual obligations will fall within the scope of the CISG regardless of the label given to the claim." *Weihai Textile Group Import & Export Co. v. Level 8 Apparel, LLC*, No. 11 Civ. 4405, 2014 WL 1494327, at \*16 (S.D.N.Y. Mar. 28, 2014) (quoting *Electrocraft Ark., Inc.*, 2009 WL 5181854, at \*7). For example, in *Weihai Textile Group Import*

---

[7] Under the Supremacy Clause of the U.S. Constitution, the CISG "preempts inconsistent provisions of state law where it applies." *Electrocraft Ark., Inc.*, 2009 WL 5181854, at \*4 (holding that the CISG preempted claims of breach of express and implied warranties under Article 2 of the Arkansas UCC); *accord Asante Techs., Inc. v. PMC-Sierra, Inc.*, 164 F. Supp. 2d 1142, 1151 (N.D. Cal. 2001) (applying the CISG to breach of contract and express warranty claims and observing that the "availability of independent state contract law causes of action would frustrate the goals of uniformity and certainty embraced by the CISG."). To the extent Wheel Choice bases its claims on the UCC or New York law (*see* SAC ¶¶ 28, 31, 34, 38), those claims are preempted.

& *Export Co.*, the court held that the CISG preempted the plaintiff's and the defendants' tort claims and dismissed them. Rejecting the plaintiff's characterization of its fraud claim, the court found that the claim "sound[ed] in breach of contract" where the plaintiff alleged that the defendants never intended to fulfill their contractual obligations. *Id*. at \*16. Similarly, the court dismissed the defendants' tort claim because it was "not based on an independent duty but rather, [was] supported by the same factual allegations as the breach of contract claims and not otherwise distinct from the contractual issues." *Id*.

Similarly, in *Electrocraft Arkansas, Inc.*, the court held that the CISG preempted the plaintiff's negligence/strict liability claim. 2009 WL 5181854, at \*5-7. The court explained that "[w]hether an action is based on contract or tort depends on the right sued upon, not the form of the pleading or relief demanded." *Id*. at \*6. The court then found that the negligence/strict liability claim at issue there was "based on contract," because it was based on the "same factual allegations" that the defendant "had a duty to provide conforming goods" to the plaintiff, it failed to do so, and such failure caused the plaintiff to sustain damages. *Id*. The Court held that the "allegations of wrongdoing" were not "extra-contractual" and did not "amount to a breach of a duty distinct from or in addition to the breach of contract claim." *Id*. The court, therefore, held that the CISG barred the plaintiff's tort claim. *Id*.

Wheel Choice's tort claims are similarly barred. Wheel Choice bases its contract claims on Jiangsu's alleged representations "concerning the use and suitability" of the Alfina Wheels, Jiangsu's "many years of experience in manufacturing wheels," and that Jiangsu "stands behind its product." (SAC ¶¶ 26-27, 53.) Wheel Choice alleges that Jiangsu breached its contractual obligations to supply wheels of "conforming quality, merchantable and suitable for its intended use on automobiles." (SAC ¶ 28; *accord* SAC ¶¶ 29-30, 35, 46, 52.)

Similarly, Wheel Choice bases its tort claims on Jiangsu's alleged representations regarding its "years of experience" in the wheel industry (SAC ¶¶ 60, 63) and Jiangsu's failure to deliver wheels of sufficient quality:

- Negligence (Count III): Jiangsu allegedly had a duty to supply wheels that "would meet plaintiff's requirements." (SAC ¶¶ 40-42.)

- Common-Law Fraud (Count VI) and Intentional Misrepresentation (Count VIII): Jiangsu allegedly "represented" to Wheel Choice that the wheels "were fit for the usage in the automotive use." (SAC ¶¶ 57, 73.)

- Negligent Misrepresentation (Count VII): Jiangsu allegedly "represented" to Wheel Choice that the wheels "were fit for the usage in the automotive use." (SAC ¶ 63.)

- Defective Product (Count IX): The wheels were allegedly "defective" and "in a condition most certainly not reasonably contemplated by [Wheel Choice][.]" (SAC ¶ 83.)

Wheel Choice's tort claims are not "distinct" from Wheel Choice's contract claims. As shown above, all of the claims are based on Jiangsu's failure to supply Alfina Wheels that met Wheel Choice's quality expectations, and Wheel Choice alleges that such failure breached the parties' contracts. Confirming its claims' complete overlap, Wheel Choice seeks the same damages for its contract and tort claims. (*Compare* SAC ¶¶ 30, 38, 50, 55 *with* SAC ¶¶ 44, 61, 71, 79, 84.) The Court should dismiss Wheel Choice's tort claims, which are no less defective than the tort claims barred by the courts in *Weihai Textile Group* and *Electrocraft Arkansas*.

### 2. New York Law Bars Wheel Choice's Tort Claims.

#### a. The Tort Claims Are Duplicative of Contract Claims.

Under New York law, "[i]t is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389 (1987). In alleging five tort

claims based on the Alfina Wheels' pre-settlement sales (Counts III, VI, VII, VIII, IX), Wheel Choice does not identify such a duty.  (*See* Section III.B.1, above.)

In *Clark-Fitzpatrick*, the New York Court of Appeals explained that a tort claim must be based on a legal duty that "spring[s] from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract." *Clark-Fitzpatrick, Inc.*, 70 N.Y.2d at 389.  The Court of Appeals found that the plaintiff's negligence claim failed this test because the plaintiff restated "albeit in slightly different language . . . the 'implied' contractual obligations asserted in the cause of action for breach of contract."  *Id.* at 390 ("Merely charging a breach of a 'duty of care', employing language familiar to tort law, does not, without more, transform a simple breach of contract into a tort claim.").

Similarly, "under New York law, where a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract."  *Telecom Int'l America v. AT&T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001).  "In other words, simply dressing up a breach of contract claim by further alleging that the promisor had no intention, at the time of the contract's making, to perform its obligations thereunder, is insufficient to state an independent tort claim." *Id.*; *accord Cronos Grp. Ltd. v. XComIP, LLC*, 156 A.D.3d 54, 62-63 (N.Y. App. Div. 2017) (court "has held numerous times that a fraud claim that arises from the same facts as an accompanying contract claim, seeks identical damages and does not allege a breach of any duty collateral to or independent of the parties' agreements is subject to dismissal as redundant of the contract claim."); *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 417-18 (S.D.N.Y. 2013)

(dismissing fraud claim that failed to allege "a legal duty separate from the duty to perform" the contract, or "a fraudulent misrepresentation collateral or extraneous to the contract").

Here, Wheel Choice alleges that Jiangsu breached the parties' contract "[b]y virtue of the non-conforming nature" of the wheels. (SAC ¶ 30.)[8] Wheel Choice does not allege a duty separate from Jiangsu's alleged duty to supply wheels that conformed to Jiangsu's contractual obligations. Nor does Wheel Choice allege a fraudulent misrepresentation that is collateral or extraneous to the contract. Rather, Wheel Choice bases its tort claims on Jiangsu's alleged failure to deliver wheels that conformed with alleged requirements under the parties' sales contract. (*See* Section III.B.1, above.) Pursuant to *Clark-Fitzpatrick*, *Telecom Int'l America*, and their progeny, those allegations fall short. The Court should dismiss Wheel Choice's tort claims (Counts III, VI, VII, VIII, IX).

### b. The Economic Loss Rule Bars Wheel Choice's Tort Claims.

The economic loss rule also bars Wheel Choice's tort claims. New York courts "restrict[] plaintiffs who have suffered 'economic loss,' but not personal or property injury, to an action for the benefits of their bargains," and thus, "[i]f the damages suffered are of the type remediable in contract, a plaintiff may not recover in tort." *Carmania Corp., N.V. v. Hambrecht Terrell Int'l*, 705 F. Supp. 936, 938-39 (S.D.N.Y. 1989) (dismissing professional malpractice and negligent misrepresentation claims); *accord Kalimantano GmbH*, 939 F. Supp.2d at 416-17 (dismissing fraudulent misrepresentation claim because the plaintiff failed to "allege an injury beyond

---

[8] *Accord* SAC ¶ 29 (breach of contract based on allegation that the wheels were "not of the kind and quality represented by Jiangsu and as such, did not conform to the terms of the sales contract, was [*sic*] not of merchantable quality and was [*sic*] not suitable for use by plaintiff's customers"), ¶ 35 (breach of warranty of fitness based on implied warranty that the wheels "were fit to be utilized on luxury vehicles"), ¶ 48 (breach of express warranty based on wheels' alleged failure "to properly perform during ordinary use, and were otherwise defective"), ¶ 54 (breach of implied warranty of merchantability based on claims that wheels "failed of its ordinary purpose and was [*sic*] otherwise defective").

economic loss"); *Shred-It USA Inc., v. Mobile Data Shred*, 222 F. Supp. 2d 376, 379 (S.D.N.Y. 2002) ("For claims alleging only economic loss . . . the usual means of redress is an action for breach of contract; a tort action for economic loss will not lie.").

Here, in its breach of contract claims, Wheel Choice alleges that it suffered a monetary loss of $2,000,000 "[b]y virtue of the non-conforming nature" of the Alfina Wheels. (SAC ¶ 30; *accord* SAC ¶¶ 38, 50, 55.) That loss allegedly includes "a refund of all monies paid to Jiangsu" and "consequential damages." (SAC ¶ 31.) Wheel Choice's tort claims seek the same damages based on the same alleged economic loss. For each of its tort claims, as it did in its contract claims, Wheel Choice seeks damages of $2,000,000. (SAC ¶¶ 44, 61, 71, 79, 84.) In its negligence claim, Wheel Choice describes this amount as including "costs and expenses paid by plaintiff for the purchase of the Alfina Luxury Wheels" and "lost profits and loss of business good will." (SAC ¶ 44.) These are the same types of damages that Wheel Choice demands from Jiangsu under the parties' contract. "[C]osts and expenses paid by plaintiff for the purchase" of the wheels are synonymous with "a refund of all monies paid to Jiangsu." (SAC ¶¶ 31, 44.) And, "lost profits and loss of business good will" are potential "consequential damages" of a breach of contract.[9]

Because Wheel Choice alleges only economic losses and "has not suffered any personal or property damage, it is limited to an action in contract for the benefit of its bargain." *See Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 220 (S.D.N.Y. 2007) (dismissing negligent misrepresentation claim).

---

[9] *See, e.g.*, *Tractebel Energy Marketing, Inc. v. AEP Power Marketing, Inc.*, 487 F.3d 89, 109 (2d Cir. 2007) ("Lost profits are consequential damages when, as a result of the breach, the non-breaching party suffers loss of profits on collateral business arrangements.").

### C.    Wheel Choice Fails To State A Fraud Claim (Counts VI & VIII).[10]

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 570). The "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Here, Wheel Choice does not allege facts that give rise to the plausible inference that Jiangsu acted with fraudulent intent. Wheel Choice alleges only that Jiangsu sought to "gain profit" from the parties' transaction. (SAC ¶¶ 59, 75.) Of course, it is not fraud to seek profit from an arms-length commercial transaction. The Second Amended Complaint does not allege a single fact to support Wheel Choice's assertion that Jiangsu "was aware" that the wheels "were in fact not fit for automotive use" before it sold them to Wheel Choice (SAC ¶¶ 58, 74.) Far from any attempt to defraud Wheel Choice, Jiangsu sought to resolve the alleged problems with the wheels after Wheel Choice reported them to Jiangsu. Jiangsu agreed to (i) indemnify Wheel Choice, (ii) compensate Wheel Choice, and (iii) accept the return of the allegedly defective Alfina Wheels. (SAC ¶ 18; Pirutinsky Decl. ¶ 9 & Exs. F, H.)

The Second Amended Complaint also fails under Rule 9(b) to "state with particularity the circumstances constituting fraud." "For claims of fraudulent misrepresentation," as alleged here, "the Second Circuit has held that Rule 9(b) requires allegations that '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Manhattan Motorcars, Inc.*, 244 F.R.D. at 213, 216-17 (quoting *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir.

---

[10] A "claim for intentional misrepresentation . . . under New York law, is identical to a claim for fraud." *Assoun v. Assoun*, No. 14 Civ. 1368, 2015 WL 110106, at *5 (S.D.N.Y. Jan. 7, 2015). Accordingly, Jiangsu addresses those claims together in this motion.

2000)) (dismissing fraudulent misrepresentation claim because the plaintiff failed to identify who made the representations or where those representations were made).

While Wheel Choice alleges Jiangsu represented the Alfina Wheels "were fit for the usage in the automotive use" (SAC ¶¶ 57, 73), it does not identify who made that representation or where and when the representation was made. Nor does Wheel Choice allege when or how Jiangsu became aware that the wheels were not fit for automotive use.

Because Wheel Choice fails to satisfy the requirements of Rules 8(a) and 9(b) of pleading fraud, the Court should dismiss the "Common-Law Fraud" and the "Intentional Misrepresentation" claims (Counts VI & VIII).

## IV.   THE POST-SETTLEMENT CLAIMS FAIL AS A MATTER OF LAW.

### A.   Wheel Choice's Failure to Satisfy Pleading Requirements Requires Dismissal Of The Post-Settlement Claims (Counts XIII, XIV, XV, XVI, XVIII).

Wheel Choice alleges it was damaged by the Alfina Wheels' sales occurring after the parties' settlement but fails to allege any basis to hold Jiangsu liable for those sales. While Wheel Choice asserts in conclusory fashion that Jiangsu sold or distributed the allegedly defective wheels (SAC ¶¶ 109, 113, 121, 139), it also acknowledges that Choice Auto—not Jiangsu—actually sold those wheels. (*Id*. ¶ 133; Pirutinsky Decl. ¶ 10 & n.1, Ex. I.)

The Court should disregard Wheel Choice's unsupported accusation that Jiangsu sold or distributed the allegedly defective wheels after the parties' settlement because that accusation is not consistent with Wheel Choice's evidence. Wheel Choice relies on a Merceli Wheels' invoice, *Choice Auto's alleged subsidiary*, and that invoice does not mention Jiangsu (Pirutinsky Decl. ¶ 10 & n.1, Ex. I). *Reilly*, 2018 WL 3559089, at *14 n.18; *supra* n.6. Wheel Choice also relies on the June 2019 Email in which Mr. Pirutinsky advised Jiangsu that "Matthew Choy the owner of Cathy Wheel factory in Xi'an" was selling Alfina Wheels in the United States. (Pirutinsky Decl. Ex. G

at 2.) The Second Amended Complaint and Mr. Pirutinsky's declarations indicate Mr. Choy is associated with both "Cathy Wheel Factory" and defendant Choice Auto.[11] Neither Mr. Pirutinsky nor Jiangsu indicates in that email exchange that Jiangsu directed Mr. Choy to sell the Alfina Wheels; rather, Jiangsu responded: "[w]e are so sorry to hear that Matthew Choy sold the r[e]turned wheels without any authorization from Alfina and we have asked Matthew Choy to stop to sell Alfina wheels any more." (Pirutinsky Decl. Ex. G at 3.) Thus, Wheel Choice knew that Matthew Choy—not Jiangsu—sold the Alfina wheels, and Jiangsu learned of those sales from Wheel Choice.

"Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp.*, 550 U.S. at 555 (2007); *accord Iqbal*, 556 U.S. at 678. Because Wheel Choice offers only speculation that Jiangsu was involved in the post-settlement sales, and the contents of Wheel Choice's exhibits incorporated by the Second Amended Complaint belie that speculation, the Court should dismiss all of Wheel Choice's claims based on the post-settlement sales (Counts XIII, XIV, XV, XVI, XVIII).

### B. Wheel Choice's Claim Under Section 349 Of New York General Business Law (Count XVI) Is Duplicative Of Wheel Choice's Contract Claim.

Apart from the pleading deficiencies identified in Section IV.A above, the Court should dismiss Wheel Choice's claim under Section 349 of New York General Business Law ("GBL § 349") (Count XVI) because it is duplicative of Wheel Choice's contract claim (Count XVIII). To state a claim under GBL § 349, Wheel Choice must allege a loss "independent of the loss caused by the alleged breach of contract." *See Spagnola v. Chubb*, 574 F.3d 64, 74 (2d Cir. 2009) (affirming dismissal of claim under GBL § 349 because the plaintiff "failed to plead a sufficient

---

[11] Wheel Choice alleges "Choice Auto is an American affiliate of a company in China," and Choice Auto distributed the Alfina Wheels. (SAC ¶¶ 132-33; Pirutinsky Decl. ¶¶ 10, 12.)

injury"). Wheel Choice alleges Jiangsu breached the October 2018 Agreement and violated GBL § 349 by distributing the Alfina Wheels. (*Compare* SAC ¶ 127 *with* SAC ¶ 139.) While Wheel Choice alleges there is "no adequate remedy at law" for its GBL § 349 claim (SAC ¶ 130), for the same conduct, Wheel Choice also alleges that it is entitled to monetary damages of $2 million in its contract claim (SAC ¶ 141). Wheel Choice cannot have its cake and eat it too. The Court should dismiss the duplicative GBL § 349 claim (Count XVI).

## V. WHEEL CHOICE'S IMPLIED INDEMNITY CLAIM FAILS AS A MATTER OF LAW (COUNT X).

Wheel Choice alleges a claim of common-law or implied indemnity. (Count X.) As an initial matter, "[a] contract cannot be implied in fact where there is an express contract covering the subject matter involved." *Julien J. Studley, Inc. v. New York News, Inc.*, 70 N.Y.2d 628, 629 (1987). Here, the implied indemnity claim (Count X) covers the same subject matter as Wheel Choice's claim under the Indemnification Agreement (Count XI). (*Compare* SAC ¶¶ 86, 89-90 *with* SAC ¶¶ 94, 97-98.) Indeed, in asserting its *implied* indemnity claim, Wheel Choice alleges Jiangsu "*contractually* agreed" "to provide indemnity for any claims asserted by [Wheel Choice's] customers." (SAC ¶ 88 (emphasis added).)

The implied indemnity claim suffers from additional deficiencies. Wheel Choice fails to identify any customer claim with specificity for which Jiangsu failed to compensate it. (*See* Section II, above.) Further, "the party seeking indemnification must have delegated exclusive responsibility for the duties giving rise to the loss to the party from whom indemnification is sought, and must not have committed actual wrongdoing itself." *Board of Managers of Olive Park Condo. v. Maspeth Props., LLC*, 170 A.D. 3d 645, 647 (N.Y. App. Div. 2019) (dismissing common-law indemnification claim). Here, Wheel Choice does not allege it "delegated exclusive responsibility for the duties giving rise to the loss" to Jiangsu. On the contrary, Wheel Choice provided Jiangsu

specifications to manufacture the Alfina Wheels. (Pirutinsky Decl. Ex. C.) Because Wheel Choice failed to plead facts showing it is entitled to implied indemnity, and the parties' written Indemnification Agreement precludes any such indemnity, the Court should dismiss Count X.

## VI. WHEEL CHOICE'S CONTRIBUTION CLAIM FAILS AS A MATTER OF LAW (COUNT XII).

Wheel Choice's contribution claim is based on the same claims and damages that the parties covered in the Settlement Agreements. Accordingly, the contribution claim fails for the reasons provided in Section III above.

Wheel Choice also fails to satisfy the requirements of CPLR § 1401 to state a contribution claim. Wheel Choice alleges only in general terms that it "has incurred, and continues to incur, damages from customer claims." (SAC ¶ 106; *accord* SAC ¶¶ 86, 97.) Wheel Choice does not allege by name or description any particular customer, let alone identify the specific claims that such customer has asserted. Those allegations do not suffice. *See, e.g.*, *Am. Med. Distribs. v. MacDonald Tuskey & Redhawk Holdings Corp.*, 16-CV-6016, 2018 WL 1478301, at *6 (S.D.N.Y. Mar. 23, 2018) (dismissing contribution claim "based entirely" on "conclusory allegations").

Besides, Wheel Choice does not allege it is liable for any "personal injury, injury to property or wrongful death." CPLR § 1401. A party may not seek contribution, as Wheel Choice seeks here, where that party's "potential liability to a third party is for economic loss resulting only from a breach of contract." *Board of Educ. v. Sargent, Webster, Crenshaw & Folley*, 71 N.Y.2d 21, 24, 26 (1987) (holding that "purely economic loss resulting from a breach of contract does not constitute injury to property within the meaning of New York's contribution statute"); *accord Chatham Towers, Inc. v. Castle Restoration & Constr. Co., Inc.*, 151 A.D.3d 419 (N.Y. App. Div. 2017) (same).

Thus, the Court should dismiss Wheel Choice's contribution claim (Count XII).

**VII.  WHEEL CHOICE HAS NOT ALLEGED A
VIABLE BASIS FOR ATTORNEYS' FEES (COUNT XIII).**

"Under the general rule in New York, attorneys' fees are the ordinary incidents of litigation and may not be awarded to the prevailing party unless authorized by agreement between the parties, statute, or court rule." *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 199 (2d Cir. 2003) (denying attorneys' fees).  Wheel Choice does not allege a court rule, and its statutory and indemnification claims are defective (*see* Section II, IV, V).

The Indemnification Agreement makes no mention of "attorneys' fees," (Pirutinsky Decl. Ex. H), and "attorney's fees are not recoverable in the absence of express language in the contract or statute." *Royal Disc. Corp. v. Luxor Motor Sales Corp.*, 9 Misc. 2d 307, 308 (App. Term 1957); *accord Oscar Gruss & Son*, 337 F.3d at 199 ("Under New York law, the court should not infer a party's intention to provide counsel fees as damages for a breach of contract unless the intention to do so is unmistakably clear from the language of the contract.").  The Court should dismiss Wheel Choice's claim for attorneys' fees (Count XIII).

**VIII.  THE COURT SHOULD DISMISS THE
CLAIMS AGAINST JIANGSU WITH PREJUDICE.**

"While pleading is not a game of skill in which one misstep may be decisive to the outcome, neither is it an interactive game in which plaintiffs file a complaint, and then bat it back and forth with the Court over a rhetorical net until a viable claim emerges." *Kravitz v. Travarios*, No. 19 Civ. 8438, 2020 WL 3871340, at *12 (S.D.N.Y. July 8, 2020).  The Second Amended Complaint is Wheel Choice's third attempt to plead a viable claim against Jiangsu.  In its latest attempt, Wheel Choice incorporated wholesale three multiple-page declarations, including their exhibits.  When closely examined, Wheel Choice fails to adequately allege a single one of its claims.  Thus, the Second Amended Complaint confirms that Wheel Choice cannot salvage its claims and demonstrates that further amendment would be futile.  Under these circumstances, dismissal with

prejudice is appropriate. *See In re Crude Oil Commodity Litig.*, No. 06 Civ. 6677, 2007 WL 2589482, at \*4 (S.D.N.Y. Sept. 7, 2007) (dismissing with prejudice where, as here, the plaintiffs had "numerous opportunities to amend as well as full notice of the deficiencies in their [complaint]").

**<u>CONCLUSION</u>**

For the foregoing reasons, pursuant to Rule 12(b)(6), the Court should enter an Order dismissing the Second Amended Complaint as against Jiangsu with prejudice, and for such other and further relief as this Court may deem just and proper.

Dated:    New York, New York               Respectfully submitted,
             March 1, 2021

                                      ZHONG LUN NEW YORK LLP

                       By:    */s/ Kenneth M. Katz*
                                Kenneth M. Katz
                                Kerry J. Kaltenbach
                                Two Wall Street, 21st Floor
                                New York, NY  10005
                                e-mail: kenkatz@zhonglun.com
                                e-mail: kerrykaltenbach@zhonglun.com
                                tel: (212) 380-8388
                                fax: (212) 810-1995

                                Leodis C. Matthews
                                (*pro hac vice admission anticipated*)
                                ZHONG LUN LAW FIRM LLP
                                4322 Wilshire Blvd. Suite 200
                                Los Angeles, CA  90025
                                email: leodismatthews@zhonglun.com
                                tel: (323) 930-5690
                                fax: (323) 930-5693

                                *Attorneys for Defendant Jiangsu Sainty*
                                *Machinery and Imp. & Exp. Co. Ltd.*