UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------x
WHEEL CHOICE, LLC,                                     : Civil Action No. 20-cv-5629 (CS)
                                                       :
                        Plaintiff,                     :
                                                       :
        -against-                                      :
                                                       :
                                                       :
SAINTY GROUP (U.S.A.), INC.,                           :
JIANGSU SAINTY MACHINERY and,                          :
IMP. & EXP. CO. LTD, and CHOICE AUTO, INC.,            :
                                                       :
                        Defendants.                    :
-------------------------------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION FOR DISMISSAL OF PLAINTIFF'S COMPLAINT**

**T**HE LAW OFFICE OF JEREMY ROSENBERG
*Attorney for Plaintiff*
777 Chestnut Ridge Road, Suite 202
Chestnut Ridge, New York 10977
(845) 729-1172

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------x
WHEEL CHOICE, LLC,                                   : Civil Action No. 20-cv-5629 (CS)
                                                     :
                              Plaintiff,             :
                                                     :
               -against-                             :
                                                     :
                                                     :
SAINTY GROUP (U.S.A.), INC.,                         :
JIANGSU SAINTY MACHINERY and,                        :
IMP. & EXP. CO. LTD, and CHOICE AUTO, INC.,          :
                                                     :
                              Defendants.            :
-------------------------------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR DISMISSAL OF PLAINTIFF'S COMPLAINT

Plaintiff Wheel Choice, LLC, ("Wheel Choice"), respectfully submits this Memorandum of Law in opposition to defendants' instant application that seeks dismissal of plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).   For the reasons set forth below, the Court should deny defendants' motion in its entirety.

### Preliminary Statement

Wheel Choice, a distributor of Alfina Luxury Wheels and Montoro Truck Wheels, specifically purchased from defendants Sainty Group (U.S.A.), Inc., and Jiangsu Sainty Machinery Imp. & Exp. Co., Ltd. (collectively "Jiangsu"), luxury wheels with the Alfina Luxury Wheel logo and design, said logo and design owned and trademarked by plaintiff, for plaintiff to distribute to its wholesale and retail customers for re-sale to individual end user owners of various types of luxury automobiles.   Indeed, said logo and design is trademarked and unique to Wheel Choice's brand. Notwithstanding such however, Jiangsu faultily manufactured the aforementioned luxury

{00033122.DOCX}

wheels, said faulty luxury wheels causing wheel cylinders to randomly break while the automobile is in operation, causing potential harm to the public at large. Indeed further, because the luxury wheels prominently display the Alfina trademarked logo that is so unique to Wheel Choice's brand, the damage resulting from the faulty luxury wheels has exposed Wheel Choice to liability and other pecuniary harm. While Wheel Choice had demanded that Jiangsu arrange for the return of the aforementioned faulty wheel products to China and ensure that these products not be distributed to any other wheel distributor, Jiangsu had failed to do so. Rather, while Jiangsu accepted the return of a good deal of the aforementioned faulty wheel products, Jiangsu has been re-selling those same faultily manufactured wheel products it was obligated to send back to China, to other distributors in the United States. As a result, not only has plaintiff suffered substantial financial harm and injury plus damage to their trademark, business reputation and good will for which it is entitled to just compensation, Jiangsu has exposed the public at large to harm and has exposed plaintiff to liability for that harm. As such, plaintiff was compelled to commence the instant action that is grounded in claims for breach of contract, breach of warranty, trademark dilution, negligent and intentional misrepresentation and injunctive relief. More importantly however, upon commencement of the instant action, plaintiff was compelled to seek the immediate imposition of injunctive relief in order to stave off its exposure to future liability and other pecuniary harm, and further, to prevent the significant harm the public at large is poised to suffer. To that end, the Court issued a permanent and mandatory injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure enjoining defendant Jiangsu and/or Choice Auto from distributing and/or selling the Alfina Luxury Wheels to any wholesaler,

retailer and/or distributor of automotive tires[1].

### The Relevant Facts[2]

Plaintiff Wheel Choice is a distributor of Alfina Luxury Wheels and Montoro Truck Wheels for various types of automobiles. Indeed, the Alfina brand is Wheel Choice's unique brand with its trademarked logo prominently displayed on the Alfina Luxury Wheels.

As a result of, and with reliance upon Jiangsu's representations, Wheel Choice contracted with Jiangsu for the purpose of Jiangsu manufacturing the Alfina Luxury Wheels, which Wheel Choice would purchase in large quantities to be sold on a retail and/or wholesale basis.

In June 2018, the Alfina Luxury Wheels were delivered by Jiangsu to Wheel Choice for distribution in New York. Plaintiff Wheel Choice provided monetary consideration for the shipment of Alfina Luxury Wheels manufactured and delivered by Jiangsu. Upon receipt of the aforementioned delivery, Wheel Choice distributed said Alfina Luxury Wheels to various retail and/or wholesale distributors of automotive tires.

From the very outset, the Alfina Luxury Wheels failed to function properly. Most specifically, various purchasers of the Alfina Luxury Wheels at both the retail and wholesale level reported to Wheel Choice that the Alfina Luxury Wheels failed to properly perform and were otherwise completely unusable. Most specifically, Wheel Choice was advised by one of its customers, Webster Tire and Wheels ("Webster"), that

---

[1]      Indeed, the Court's issuance of injunctive relief readily demonstrates at the outset that plaintiff's claims as set forth in its amended complaint possess a likelihood of success on the merits, let alone sufficiently pled viable causes of action.
[2]      While plaintiff briefly provides herein the relevant facts of this action, such facts are more detailed, amplified and substantiated in plaintiff's declarations previously filed in this action and identified on the Court's docket as Document #4, Document #14 and Document #20 (all, with their respective annexed exhibits).

{00033122.DOCX}

the faulty Alfina wheels were causing inner wheel barrels to randomly break while the automobile was in operation.  This breakage of the inner wheel barrels caused the tire to which the Alfina wheel was attached to burst, resulting in said automobile spinning out of control, resulting in potential fatalities.

Upon being advised of the foregoing by Webster, Wheel Choice immediately contacted Jiangsu to advise Jiangsu of the faultily performing wheel barrels, and demanded that Jiangsu perform testing on its wheel barrels to ascertain the source of the fault in the wheel barrels.   To that end, Jiangsu conducted "tensile testing" or "tension testing", on one batch sample of wheel barrels.  Such testing is a test in which a sample is subjected to a controlled tension until failure.  Indeed, properties that are directly measure by a tensile test include ultimate tensile strength, breaking strength, maximum elongation and reduction in area.  The tensile tests conducted by Jiangsu readily revealed a decreasing ductility in the percent elongation-in other words, a decreasing amount of strain the wheel barrel could experience before failure in tensile testing.   Simply put, Jiangsu's faultily manufactured wheel barrels failed the tensile testing conducted by Jiangsu.

Subsequently, upon being advised by its other customers of similar faulty Alfina wheels, Wheel Choice conducted its own tensile testing on other random batches of wheel barrels manufactured by Jiangsu for Wheel Choice.  Indeed, such sample batches also failed tensile testing.

In an effort to resolve the foregoing, and so as to ensure that the public at large not be further exposed to Jiangsu's faultily manufactured wheels, Wheel Choice subsequently contracted with defendant Jiangsu that, because the Alfina Luxury Wheels

as delivered by Jiangsu to plaintiff was not of the kind and quality represented by Jiangsu and as such, was not of merchantable quality and not suitable for use by plaintiff's customers, defendant Jiangsu would arrange for the return of the aforementioned faulty wheel products to China and ensure that these products not be distributed to any other wheel distributor.  Indeed further, Jiangsu and plaintiff entered into a written agreement whereby Jiangsu agreed to indemnify and hold harmless plaintiff Wheel Choice from any and all liability resulting from the aforementioned faultily manufactured wheel products.  Notwithstanding the aforementioned agreements however, and notwithstanding plaintiff's full and complete compliance with same, Jiangsu failed to comply with its obligations under the aforementioned agreements. Rather, while Jiangsu did accept the return of a good deal of the aforementioned faulty wheel products, Jiangsu has been re-selling those same faultily manufactured wheel products it was obligated to send back to China, to other distributors in the United States.  Most significantly, the continued distribution of the aforementioned faulty and defective Alfina Luxury Wheels poses a danger to the public at large in that said defective wheels have proved to break and rupture during ordinary use thus exposing the public at large to sever harm and danger, and further, notwithstanding the aforementioned indemnification agreement with which Jiangsu obviously has no, and had no intention to comply, exposing plaintiff to significant liability.

Indeed, by way of example, defendant Jiangsu had continued to distribute the defective Alfina Luxury Wheels prominently displaying plaintiff's Alfina trademarked logo on said defective wheels, to a wholesaler of automotive tires and wheels, to wit, defendant Choice Auto.  As set forth above however, because of the

defective nature of the Alfina Luxury Wheels, the continued distribution of said luxury wheels continued to sully and tarnish Wheel Choice's sterling reputation in the automotive industry and exposed plaintiff to liability and other pecuniary harm.   To be certain, Wheel Choice's business has suffered and will continue to suffer a loss of business good will as a result of it having sold and distributed the faultily manufactured Alfina Luxury Wheels.

Most significantly, the continued distribution of the aforementioned faulty and defective Alfina Luxury Wheels posed a danger to the public at large in that said defective wheels have proved to break and rupture during ordinary use, exposing the public at large to sever harm and danger, and further exposing plaintiff to significant liability.

Plaintiff's purchasers demanded from plaintiff a refund of the Alfina luxury wheel purchase price, and further, demanded from plaintiff that it remedy the damage already caused by the Alfina Luxury Wheels.

Plaintiff has provided funds under threat of legal compulsion and expect to provide additional funds to as yet unidentified purchasers of the Alfina Luxury Wheels.

Plaintiff has further ceased distributing the Alfina Luxury Wheels such that it is now left remaining with significant quantities of said Alfina Luxury Wheels in its inventory for which it has previously remitted payment to Jiangsu, and which now has no value and for which there now is no market.  Plaintiff further expects to incur significant costs associated with the disposal of the Alfina luxury Wheels.

Further, plaintiff's business has suffered and will continue to suffer a loss of business good will as a result of it having sold and distributed the faultily manufactured Alfina Luxury Wheels.  Most specifically, because of the defective nature of the Alfina Luxury Wheels, the continued distribution of said luxury wheels continues to sully and tarnish plaintiff's sterling reputation in the automotive industry, dilutes the distinctive quality of the Alfina trademarked brand wheel, and otherwise exposes plaintiff to liability and other pecuniary harm.  Defendant Jiangsu's unlawful distribution of the Alfina trademarked logo in connection with the defective wheels and its resulting tarnishing of the Alfina trademarked logo will lessen the value of Alfina trademarked logo as unique identifiers of plaintiff's products[3].

## ARGUMENT

## POINT I

### DEFENDANTS' MOTION SHOULD BE DENIED UNDER THE PRINCIPLES GOVERNING A MOTION TO DISMISS BROUGHT PURSUANT TO RULE 12(b)(6)

To survive a motion to dismiss for failure to state a cause of action under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged".  Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). As stated:

---

[3]     As plaintiff's amended complaint makes plain, plaintiff expressly incorporated by reference therein all of the allegations set forth, and the documents furnished in, plaintiff's declarations identified on the Court's docket as Document #4, Document #14 and Document #20, as if said allegations contained therein and said documents annexed thereto, were expressly set forth in plaintiff's amended complaint.

{00033122.DOCX}

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully".

Id. At 1949 (citations and internal quotation marks omitted).

When resolving or determining a motion to dismiss, the district court must accept as true, all well-pled allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  Steginsky v. Xcelera, Inc., 741 F.3d 365, 368 (2d Cir. 2014); Gibbons v. Malone, 703 F.3d 595, 599 (2d Cir. 2013).  In addition, "a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level".  Keiler v. Harlequin Enters. Ltd., 751 F.3d 64, 70 (2d Cir. 2014)(citation omitted).  Further, "in considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).  "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect', which renders the document 'integral' to the complaint".  Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)(citation omitted).

Moreover, under the Federal Rules of Civil Procedure 8(a)(2), " a pleading that states a claim for relief must contain...a short and plain statement of the claim showing that the pleader is entitled to relief".  Fed. R. Civ. P. 8(a)(2).  In determining whether this standard has been met, "[s]pecific acts are not necessary; the statement

need only give the defendant fair notice of what the...claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 94 (2007)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

The pleading requirements under Rule 8(a) are to be construed liberally, in order to focus litigation on the merits of a claim. See, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514, 122 S. Ct. 992, 999, 152 L. Ed. 2d 1 (2002) ("[T]he liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim"). The Second Circuit has made it clear that Rule 8 is a lenient standard, and that, "dismissal pursuant to the rule 'is usually reserved for those cases in which the complaint is so confused , ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised". See, Wynder v. McMahon, 360 F.3d 73, 80 (2d Cir. 2004). The Second Circuit has noted that "although Fed. R. Civ. P. 8 does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests". See, Atuahene v. City of Hartford, 10 F. App'x 33, 34 (2d Cir. 2001).

To be most certain, even a cursory review of plaintiff's amended complaint, (which defendants fail to annex to their instant motion), as well as plaintiff's declarations identified on the Court's docket as Document #4, Document #14 and Document #20 with their respective annexed exhibits and which have been incorporated by reference therein[4], readily reveals that plaintiff's claims against defendants pleads factual content that more than allows this Court to draw the reasonable inference that

---

[4]     For the sake of brevity, plaintiff's reference to its amended complaint in this memorandum will also include reference to Document #4, Document #14 and Document #20 with their respective annexed exhibits which have been incorporated by reference into the amended complaint.

{00033122.DOCX}

defendants are liable for the misconduct alleged.   To be most certain, even a cursory review of plaintiff's amended complaint readily reveals that said amended complaint contains more than sufficient factual content to state a plausible claim on its face, and demonstrates more than the "sheer possibility" that the defendants, and most specifically the Jiangsu defendants, have acted unlawfully.  Ashcroft v. Iqbal, at 679. Notwithstanding Jiangsu's erroneously conclusory claim that, pursuant to Rule 9(b), plaintiff's causes of action for fraud and misrepresentation are "defective" because they purportedly fail to "state with particularity the circumstances constituting the fraud", even a cursory reading of plaintiff's amended complaint readily reveals the specificity by which said claims have been alleged, and which provides, at the very least, the "factual content that allows the court to draw the reasonable inference that the defendants are liable for the fraudulent misconduct alleged.   Most certainly, the Jiangsu defendants cannot claim, and do not claim that the four corners of the complaint do not provide sufficient factual content that at the very least rises to a level of "sheer possibility" that defendants have acted in a fraudulent manner[5].  In other words, plaintiff's complaint is more than adequately pled.

Moreover, defendants' claim that plaintiff has engaged in "group pleading" is also misplaced.   To be certain, defendants misapply the lenient standard used to ascertain compliance with Rule 8(a) that is controlling in the Second Circuit.  Indeed, while defendants purportedly rely upon Atuahene v. City of Hartford, supra, for the

---

[5]      To the extent that Jiangsu's motion instantly and erroneously contends that Wheel Choice's complaint "speculates" that the distribution of the defective wheels was instigated by Jiangsu and thus, such "speculation is not sufficient to state a claim, plaintiff has affirmatively stated with certainty in the supporting declarations of Rafael Pirutinsky previously submitted in this action as Document #4, Document #14 and Document #20 and incorporated by reference in plaintiff's amended complaint, that the defective wheels subsequently distributed by Choice Auto originated from Jiangsu, and were the same defective wheels returned to Jiangsu by Wheel Choice.

{00033122.DOCX}

proposition that "lumping" defendants together fails to satisfy Rule 8(a) because it does not adequately inform them of the allegations against each entity, such is simply untrue. Even a cursory review of the amended complaint reveals that said amended complaint provides fair notice to each defendant of all claims directed against them and clearly has established the grounds upon which those claims rest.   It not only differentiates the entities named as defendants in its "Parties" section of the amended complaint, but it is readily apparent from plaintiff's amended complaint which clearly identifies "Jiangsu" as both Sainty Group (U.S.A.), Inc., and Jiangsu Sainty Machinery Imp. & Exp. Co., Ltd., collectively, the manufacturer of the defective wheels, and as the "defendant" that has caused pecuniary harm through, amongst other things, the dilution of plaintiff's trademark, by its continued distribution of the defective wheels containing plaintiff's trademarked logo.  Because of this clarity, defendants are not left guessing as to which allegations apply to which of the Jiangsu defendants, and cannot fairly claim that no specific allegations are leveled at each entity.  As demonstrated, pursuant to Rule 12(b)(6), the Court must accept sufficiently pled factual matters as true.  This includes the allegations leveled in plaintiff's amended complaint against the Jiangsu defendants, including the allegation as to their corporate parent/subsidiary relationship.  Indeed, plaintiff's amended complaint provides sufficient information for, not only the Court, but also for the defendants, to reasonably infer that the Jiangsu defendants are liable for the misconduct alleged in plaintiff's amended complaint.  As such, there can be no doubt that Jiangsu's instant application to dismiss plaintiff's amended complaint should be denied in its entirety.[6]

---

[6]      While Jiangsu purports to contend in erroneous and conclusory fashion that "Wheel Choice does not-and cannot-allege any facts supporting its allegations that Jiangsu is the parent or an affiliate of

{00033122.DOCX}

Defendants' contention that New York law and the CISG bars Wheel Choice's tort claims, and most specifically the claims grounded in common law fraud and negligent and intentional misrepresentation, because such claims are purportedly duplicative of its contractual claims is wholly without merit.  First, even a cursory review of plaintiff's amended complaint clearly alleges violations of legal duties independent of the contract itself.   By way of example, while "as a general rule, to recover damages for tort in a contract matter, it is necessary that the plaintiff plead and prove a breach of duty distinct from, or in addition to, the breach of contract, (Wyle Inc. v. ITT Corp., 130 A.D.3d 438, 439 (1st Dept. 2015), in contrast, a plaintiff sets forth a cause of action for fraudulent inducement if it alleges that "the defendant made misrepresentations of present facts that were collateral to the contract and served as an inducement to enter into the contract. Did-it.com, LLC v. Halo Grp., Inc., 174 A.D.3d 682 (2d Dept. 2019). Although defendants instantly contend that plaintiff's aforementioned tort claims, and most specifically plaintiff's claims grounded in fraud, are duplicative of plaintiff's contractual claims, it is readily apparent from even the face of the amended complaint that the alleged representations and promises of defendants, upon which plaintiff relied upon into entering into agreements to purchase the defective wheels, are nowhere contained in any agreement or contract, but rather, said representations and promises made by defendants were clearly independent of and extraneous of the terms of the agreements between plaintiff and defendants, and that said representations and promises were misrepresentations of present facts that were collateral to the contract

---

Sainty Group", plaintiff's amended complaint sufficiently alleges that Jiangsu and defendant Sainty Group U.S.A., Inc. ("Sainty") are "one entity", and plaintiff affirmatively and properly alleges that the aforementioned entities have a parent corporation/subsidiary relationship, which at this juncture, is deemed true.

{00033122.DOCX}

and served as an inducement to enter into the contracts between plaintiff and defendants.   As such, there can be no doubt that plaintiff's tort claims are not duplicative of plaintiff's contractual claims and are thus sustainable as a matter of law.

Moreover, contrary to Jiangsu's contention, in actions such as the instant action, where tort claims were brought simultaneously with claims grounded in breach of contract, courts in the Southern District have permitted the tort claims to proceed ,finding that such claims are not barred by the economic loss doctrine.  See, Ambac Assurance Corp. v. U.S. Bank Nat'l Ass'n, 328 F. Supp. 3d 141, 157-160 (S.D.N.Y. 2018);  Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Tr. Co., 172 F. Supp. 3d 700, 719 (S.D.N.Y. 2016); Commerzbank AG v. U.S. Bank Nat'l Ass'n, 277 F. Supp. 3d 483, 496-497 (S.D.N.Y. 2017).  Most specifically, the economic loss rule-which in the "absence of any personal injury or property damage precludes a plaintiff's claim for economic injury in negligence cases-does not preclude or otherwise bar plaintiff's instant tort claims as defendants contend, for two reasons.  532 Madison Avenue Gourmet Foods, Inc. v. Finlandia Ctr., Inc., 96 N.Y.2d 280, 727 N.Y.S.2d  49 (2001). First, the rule is inapplicable because plaintiff's amended complaint does not allege a products liability claim.  See Id. at 1101 n. 1. (stating that the economic loss rule "stands for the proposition that an end-purchaser of a product is limited to contract remedies and may not seek damages in tort for economic loss against a manufacturer…"); Travelers Cas. & Sur. Co. v. Dormitory Auth.-State N.Y., 734 F. Supp.2d 368, 378 (S.D.N.Y. 2010).  Second, despite the economic loss rule, causes of action grounded in tort may be brought provided that the plaintiff alleges that "a legal duty independent of the contract itself has been violated".  Emerald Town Car of Pearl River, LLC v. Phila.

Indem. Ins. Co., 2017 WL 1383773, AT *4 (S.D.N.Y. 2017) (citing Dorking Genetics v. United States, 76 F.3d 1261, 1269 (2d Cir. 1996). Indeed, as set forth above, plaintiff's amended complaint readily alleges violations and breaches of legal duties independent of its contractual claims and second, plaintiff's instant action does not allege a products liability claim and thus, the economic loss rule is inapplicable to the instant action as a matter of law. Thus, the aforementioned contentions of the Jiangsu defendants are without merit.

Further, plaintiff's claims grounded in fraud must also be sustained as a matter of law. Indeed, to state a claim for fraud under New York law, a plaintiff must allege: "(1) a material misrepresentation or omission of a fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages". Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 170 (2d Cir. 2015)(applying New York law); accord, Connaughton v. Chipotle Mexican Grill, Inc., 29 N.Y.3d 137 (2017). As to the pleading requirements set forth under Rule 9(b), the complaint must detail the statements that the plaintiff contends are fraudulent, identify the speaker, state when and where the statements were made and explain why the statements are fraudulent. Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, supra. "The requisite strong inference of fraud may be established either (a) by alleging facts to show that defendant had motive and opportunity to commit fraud, or by alleging facts that constitute strong circumstantial evidence of conscious misbehavior. Walia v. Veritas Healthcare Sols, LLC, 2015 WL 4743542, at *6 (S.D.N.Y. 2015). To be sure, even a cursory review of plaintiff's amended complaint readily reveals the heightened level of particularity with which plaintiff has pled its causes of action

grounded in fraud.  By way of example only, plaintiff has alleged that "Jiangsu represented to plaintiff for the purposes of their own profit that, amongst other things, the Alfina Luxury Wheels were fit for the usage in the automotive use", that "defendant had a duty to provide plaintiff with truthful information concerning the fitness and quality of the wheels it sold to plaintiff", that "defendant Jiangsu was in possession of knowledge and could have reasonably determined that the luxury wheels were in fact, not fit for automotive usage", that "defendant Jiangsu made no effort whatsoever to test, sample or otherwise determine the fitness of the luxury wheels in a manner commonly accepted in the trade and industry", that "defendant made false representations concerning the suitability and fitness of the wheels being purchased by plaintiff even though defendant well knew the purpose for which plaintiff was purchasing the wheels, and further, knew that plaintiff would rely upon defendant Jiangsu's representations", and that "plaintiff reasonably relied upon Jiangsu's representation when it purchased the Alfina Luxury Wheels from Jiangsu and when it then sold said luxury wheels various retailers and wholesalers."  To be sure, the aforementioned allegations contained in plaintiff's complaint are just an example of "the requisite strong inference of fraud" that plaintiff has established (a) by alleging facts to show that defendant had motive and opportunity to commit fraud, i.e., profit, and by alleging facts that constitute strong circumstantial evidence of the Jiangsu defendants' conscious misbehavior.  Simply put, plaintiff has satisfied the pleading requirements under Rule 8(a) and Rule 9(b) and thus, plaintiff's claims grounded in fraud should also be sustained.

**Plaintiff's Claims Based Upon The Settlement Agreements Are Properly Pled**

Simply put, defendants' contention that "Wheel Choice fails to state a

claim based on the parties Settlement Agreements" is flatly erroneous. Indeed, Counts XI and XVIII on the face of plaintiff's amended complaint are very clear as to plaintiff's allegations of the existence of a contract, plaintiff's performance pursuant to the contract, the defendants' breach of their contractual obligations and the damages resulting from defendants' breach. Indeed, the aforementioned allegations are more than amply detailed and substantiated in the supporting declarations of Wheel Choice which were incorporated by reference in plaintiff's amended complaint, said declarations containing copies of said "Settlement Agreements". Simply stated, plaintiff has previously furnished the Indemnification Agreement and the October 2018 Agreement to this Court when it previously moved for injunctive relief, said request for injunctive relief which was granted, and has otherwise demonstrated in its amended complaint that it performed its obligations under the aforementioned agreements, and that defendants breached the aforementioned agreements. Defendant's sole basis for contending that plaintiff has "failed" to adequately plead a cause of action under the "Settlement Agreements" is defendants' erroneous reading of a line in an e-mail annexed to one of plaintiff's declarations, wherein defendants make their own unilateral interpretation to claim that plaintiff has failed to perform under the aforementioned agreements. To be sure, not only is this an erroneous reading and interpretation of plaintiff's e-mail but at this juncture, is an issue that is reserved for discovery-not a basis upon which to dismiss various causes of action at the pleading stage. To be sure, at the pleading stage, the Court must accept as true, all well-pled allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor. Based on this well-settled standard, plaintiff's pleading that alleges full performance of its obligations under the

aforementioned Settlement Agreements must be accepted as true, which it is true, and thus, defendants' instant contention is without merit.

Moreover, defendants' contention that the aforementioned "Settlement Agreements "represent an accord and satisfaction and a bar to Wheel Choice's Settled Claims", is a gross misstatement of explicit statutory law, and cannot serve as a basis for dismissal of plaintiff's claims under the "Settlement Agreements". Most specifically, while defendants present N.Y. Gen. Obligations Law §15-501(2), and cherry pick a few words in §15-501(3) in order to "substantiate" its aforementioned blatantly erroneous contention, defendants purposely neglect to present to the Court the remainder of §15-501(3), which provides that "if an executory accord is not performed according to its terms by one party, the other party shall be entitled to assert his rights under the claim, cause of action... which is the subject of the accord, or to assert his right under the accord. Simply put, the distinctive feature of §15-501(3) is that the obligee does not intend to discharge the existing claim merely upon the making of the accord. Such can be done only upon performance or satisfaction of the accord. If the satisfaction is not tendered, the obligee may sue under the original claim or for breach of the accord. As such, plaintiff can, and properly has asserted its rights to seek relief for claims that are the subject of the "Settlement Agreements" and/or alternatively, has asserted its rights under the Settlement Agreements. Thus, defendants' contention that the "Settled Claims" are barred by the doctrine of accord and satisfaction is wholly without merit.

**Plaintiff's "Post-Settlement" Claims Are Properly Pled And Viable**

Defendants' contention that the "Post Settlement" claims

{00033122.DOCX}

must fail as a matter of law is also misplaced. Again, defendants' erroneous contention is predicated upon their convoluted reading of plaintiff's evidence where defendants somehow deduce that "Wheel Choice knew that Matthew Choy-not Jiangsu-sold the Alfina wheels, and Jiangsu learned of those sales from Wheel Choice". Simply put, defendants distort plaintiff's evidence to fit their baseless narrative. Rather, plaintiff has amply alleged that <u>Jiangsu has been re-selling those same faultily manufactured wheel products it was obligated to send back to China, to other distributors in the United States</u>, and has adduced by admissible evidence defendants' continued distribution of the defective Alfina Luxury Wheels, by proffering an invoice of a wholesaler of automotive tires and wheels in America, to wit, defendant Choice Auto. These allegations are not "speculative". Rather, as with defendants' misplaced and erroneous contentions concerning plaintiff's well pled claims based upon the "Settlement Agreements", defendants' erroneous reading and interpretation of the 'Merceli Wheels' invoice at this juncture, is an issue that is reserved for discovery-not a basis upon which to dismiss various causes of action at the pleading stage. To be sure, as demonstrtaed, at the pleading stage, the Court must accept as true, all well-pled allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor. Based on this well-settled standard, plaintiff's pleading that alleges that <u>Jiangsu has been re-selling those same faultily manufactured wheel products it was obligated to send back to China, to other distributors in the United States</u>, must be accepted as true, which it is true, and thus, defendants' instant contention is without merit. Thus, plaintiff's "Post Settlement" claims should be sustained in their entirety.

Further, defendants' sole contention that Wheel Choice's claim under section 349 of New York General Business Law should be dismissed is predicated upon their erroneous and conclusory contention that such is duplicative of its contract claim as set forth in Count XVIII. Most significantly however, defendants do not dispute that plaintiff's claim under section 349 of New York General Business Law is properly pled. Nonetheless, defendants' erroneously and conclusory contend without demonstration that plaintiff's claim under section 349 of New York General Business Law is duplicative of its contractual claim as set forth in Count XVIII. To be most certain, defendants' contention is wholly without merit. Indeed, even a cursory review of plaintiff's amended complaint readily reveals a loss independent of losses caused by defendants' breach of contract as set forth in Count XVIII. Indeed further, defendants woefully fail to even explain how plaintiff's claim under section 349 of New York General Business Law is duplicative of plaintiff's contract claim as set forth in Count XVIII. Simply put, plaintiff's claim under section 349 of New York General Business Law is not remotely duplicative of its contract claim set forth under Count XVIII. Thus, plaintiff's cause of action under section 349 of New York General Business Law should be sustained.

**Plaintiff's Claims Of Implied Indemnity Should Be Sustained As A Matter Of Law**

Under New York law, implied indemnity "is a restitution concept which results in a shifting of the loss because to fail to do so would result in the unjust enrichment of one party at the expense of the other." Amguard Ins.Co. v. Getty Realty Corp., 147 F. Supp. 3d 212, 220 (S.D.N.Y. 2015) (quoting Facilities Dev. Corp. v. Miletta, 584 N.Y.S.2d 491, 495 (3d Dept. 1992)(internal quotations omitted); see also, CSC Scientific Co., Inc. v. Manorcare Health Servs., Inc., 867 F. Supp. 2d 368, 377

(S.D.N.Y. 2011)("common law or implied indemnification is a 'quasi-contract' doctrine rooted in principles of equity and fairness conceptually related to restitution").

"Under New York law, an indemnitor must bear some fault for the damages suffered by the indemnitee, whether on account of negligence, equitable considerations, or statutory requirements." In re Sept. 11 Litig., 751 F.3d 86, 94 (2d Cir. 2014). "In New York, 'a cause of action for common law indemnification can be sustained only if (1) the party seeking indemnity and the party from whom indemnity is sought have breached a duty to a third person, and (2) some duty to indemnify exists between them". Highland Holdings &Zito I, v. Century/ML Cable Venture, 2007 WL 2405689, at *4 (S.D.N.Y. 2007)(quoting Ins. Co. of State of Pennsylvania v. HSBC Bank USA, 829 N.Y.S.2d 511, 518 (1st Dept. 2007)(citations omitted), aff'd sub nom. In re Century/ML Cable Venture, 311 F. App'x 455 (2d Cir. 2009). "Significantly, the key element of a common law indemnification claim is not a duty running from the indemnitor to the injured party, but rather is a separate duty owed the indemnitee by the indemnitor." Perkins Eastman Architects, P.C. v. Thor Engineers, P.A., 769 F. Supp. 2d 322, 329-330 (S.D.N.Y. 2011) (quoting Raquet v. Braun, 90 N.Y.2d 177, 183 (1997).

Simply put, plaintiff's amended complaint satisfies the aforementioned requirements.  Indeed, defendants do not, and cannot contend that plaintiff's claim for implied indemnity was not properly pled.  Rather, defendants contend that plaintiff's implied indemnity claim cannot be sustained where there is an "express contract covering the subject matter involved".  Notwithstanding defendants' erroneous claim however, a claim for implied indemnity cannot be sustained only where the existence of said contract and the scope of which clearly covers the dispute between the parties are

{00033122.DOCX}

undisputed. <u>Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.</u>, 70 N.Y.2d 382, 389 (1987).
Here, defendants are disputing the validity and/or scope of the written Indemnification
Agreement, and thus, pursuant to well-settled law, plaintiff's claim for implied indemnity
is sustainable.

## Plaintiff's Claim For Contribution Should Be Sustained As A Matter Of Law

Pursuant to CPLR §1401, "two or more persons who are subject to liability
for damages for the same personal injury, injury to property or wrongful death, may
claim contribution among them whether or not an action has been brought or a
judgment has been rendered against the person from whom contribution is sought."
CPLR §1401.  Thus, an alleged tortfeasor "may bring an action for contribution against
another alleged tortfeasor…if the two are subject to liability for damages for the same
personal injury". <u>Emanuel v. Griffin</u>, 2013 WL 5477505 at *10 (S.D.N.Y. 2013)(quoting
CPLR §1401).  The "crucial element in allowing a claim for contribution to proceed is
that the breach of duty by the contributing party must have had a part in causing or
augmenting the injury for which contribution is sought." <u>Amguard Ins.Co. v. Getty
Realty Corp.</u>, 147 F. Supp. 3d 212, 220 (S.D.N.Y. 2015).

Simply put, while defendants, in conclusory and otherwise baseless
fashion, throw around "duplicity' contentions in a woeful effort to have plaintiff's claim for
contribution dismissed, defendants have not pointed to any part of plaintiff's claim for
contribution that even is even remotely deficient in alleging the aforementioned criteria
and standard necessary to state a claim for contribution.  Indeed, defendants cannot
point to any such deficiencies. Simply stated, plaintiff has properly pled a claim for
contribution.  Most certainly, plaintiff's claim for contribution properly and sufficiently

contains the "crucial element" that the breach of duty by defendants had a significant if not total part in causing or augmenting the injury for which contribution is sought. Accordingly, plaintiff's claim for contribution must be sustained as a matter of law.

## Plaintiff May Maintain A Claim For Attorneys' Fees

The Jiangsu defendants finally contend that Wheel Choice cannot maintain a claim for attorneys' fees because such fees "are ordinary incidents of litigation and may not be awarded to the prevailing party unless authorized by agreement between the parties, statute or court rule". Indeed however, plaintiff's claim for attorneys' fees is indeed predicated upon an agreement between the parties and upon statute. First, contrary to defendants' baseless contention, the aforementioned Indemnification Agreement provides for such. Second, Wheel Choice's complaint also alleges a claim grounded upon deceptive acts and practices in violation of §349 of New York General Business Law, said statute which expressly provides as a remedy, an award of reasonable attorneys' fees to a prevailing plaintiff. As such, plaintiff has a sustainable cause of action for attorneys' fees.

## Plaintiff's Request For Leave To Amend

Notwithstanding the foregoing, in the event the Court is inclined at this juncture to grant the Jiangsu defendants' application and dismiss portions of plaintiff's complaint or its entirety, which the Court should not be so inclined to do, plaintiff instantly requests that it be permitted leave to serve and file another amended complaint. Indeed, Federal Rule of Civil Procedure 15(a) provides that "leave to amend shall be freely given when justice so requires". Fed. R. Civ. P. 15(a). "Where there is neither a showing of the movant's undue delay, bad faith or dilatory motive, nor a

showing of undue prejudice to the opposing party by virtue of allowance of the amendment, leave to amend should be granted". In Re Winstar Commc'ns., No. 01 CV 3014 (GBD), 2006 U.S. Dist. LEXIS 7618, at *4 (S.D.N.Y. Feb. 27, 2006)(citing Foman v. Davis, 371 U.S. 178, 182 (1962); Acito v. IMCERA Grp., 47 F.3d 47, 55 (2d Cir. 1995). Indeed, the Second Circuit holds as a matter of course that plaintiffs whose complaints are dismissed should typically be given an opportunity to amend. See, e.g., Blakely v. Wells, 209 Fed Appx. 18 (2d Cir. 2006); Olsen v. Pratt & Whitney Aircraft, 136 F.3d 273, 276 (2d Cir. 1998); Luce v. Edelstein, 802 F.2d 49, 56 (2d Cir. 1986). As such, because leave to amend should be freely given and there could be no showing of undue prejudice to the Jiangsu defendants by virtue of allowance of the filing of another amended complaint, Wheel Choice should be further granted leave to amend its complaint.

## CONCLUSION

For the foregoing reasons the Court should deny defendants' instant application for dismissal in its entirety.

Dated:   April 15, 2021
         Chestnut Ridge, New York

                         The Law Office of Jeremy Rosenberg
                         Attorney for Plaintiff

                 By:     _____
                         Jeremy Rosenberg (JR-4111)
                         777 Chestnut Ridge Road, Suite 202
                         Chestnut Ridge, New York 10977
                         (845) 729-1172